**Opinion issued August 23, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-09-00022-CV
_____

**DAVID STEAKLEY, MARVIN STEAKLEY, DARRELL KAINER, ALAN PETERS, GLEN M. BOUDREAUX, AND TIM S. LEONARD, Appellants**

**V.**

**ROUND ONE INVESTMENTS, L.P., SOMETIMES DOING BUSINESS AS ROUND ONE INVESTMENTS I, L.P., ROUND ONE INVESTMENTS, LLC, SOMETIMES DOING BUSINESS AS ROI INVESTMENTS, LLC, INTELLIGENT DATA DELIVERY CORP., VIDYAH, INC., JOHN S. ROBISON, AND C. WILLIAM FOWLER, Appellees**

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2007-45337**

## MEMORANDUM OPINION

Appellants David Steakley, Marvin Steakley, Darrell Kainer, Alan Peters, Glen M. Boudreaux, and Tim S. Leonard ("Buyers") appeal from an order dismissing their case without prejudice based upon a contractual forum-selection clause. We conclude that the Buyers' claims are not within the scope of the forum-selection clause. Accordingly, we reverse and remand for further proceedings.

### Background

The Buyers are individuals who claim that they were misled into investing in Intelligent Data Delivery Corporation ("IDDC"). They filed suit against the appellees, who include IDDC and interrelated businesses, along with individuals involved in the governance and management of these businesses. Round One Investments, L.L.C. ("ROI") is the general partner of Round One Investments, L.P., a venture capital firm that owned more than 10% of IDDC. ROI provided information to the Buyers in connection with their investments in IDDC.

In their original petition, the Buyers alleged that they each executed separate subscription agreements for the purchase of stock in IDDC. Each subscription agreement included a California choice-of-law provision and specified that the agreement "may be amended only by a writing executed by the Company and the Subscriber." The subscription agreement did not include a venue- or forum-selection clause.

2

Subsequently, the Buyers were asked to sign nondisclosure agreements. The form of the nondisclosure agreement provided, in its entirety:

Round One Investments, L.L.C.
NONDISCLOSURE AGREEMENT

In connection with a proposed business relationship, Round One Investments, L.L.C. ("ROI") has disclosed or may disclose to you valuable business or other information relating to ROI, its investors and/or its proposed transactions and/or has provided you or may provide you with documentation or other materials ("Proprietary Information"). In consideration of any disclosure of Proprietary Information and any negotiations concerning the proposed business relationship, the undersigned agrees as follows:

1. You acknowledge that any business or technical information relating to ROI and/or its investors and/or its proposed transactions and/or any documentation or other materials provided to you shall be deemed "Proprietary Information" and subject to the terms of this Agreement, unless otherwise agreed upon in writing by ROI.

2. You will hold in confidence and not use or disclose, directly or indirectly, any Proprietary Information except information you can document which (a) is in, or becomes part of, the public domain through no fault of yours, or (b) was properly disclosed to you by another person without restriction. In addition, you will not copy, alter, modify, or distribute any Proprietary Information. The foregoing does not grant you a license in or to any Proprietary Information. You acknowledge and agree that, as between you and ROI, all Proprietary Information and all copies thereof are owned solely by ROI.

3. If you decide not to proceed with the proposed business relationship or if asked to by ROI, you will immediately cease all use of and return all Proprietary Information and all copies and extracts to ROI.

4. You will immediately notify ROI of any unauthorized release of Proprietary Information. You understand that this Nondisclosure

Agreement does not obligate ROI to disclose any information to you, or negotiate or enter into any agreement or relationship with you.

5.      You acknowledge and agree that due to the nature of the Proprietary Information, there can be no adequate remedy at law for any breach of your obligations hereunder, that any such breach may allow you or third parties to compete unfairly with ROI resulting in irreparable harm to ROI and, therefore that upon any such breach or threat thereof, ROI shall be entitled to injunctions and other appropriate equitable relief in addition to whatever remedies it may have at law.  In addition, if ROI prevails in any legal dispute hereunder it shall be entitled to collect from you its reasonable attorneys' fees and expenses.

6.      You acknowledge and agree that for a period of three (3) years from the date this Nondisclosure Agreement is accepted, you will maintain all Proprietary Information in confidence and will refrain from using any such Proprietary Information for any purpose, unless so authorized by ROI.

7.      This Nondisclosure Agreement shall be governed and construed under the laws of the State of California and the United States without regard to conflict of laws provisions thereof.  The sole jurisdiction and venue for actions related to the subject matter hereof shall be California state and U.S. federal courts having within their jurisdiction the location of ROI's principal place of business.  You consent to the jurisdiction of such courts.

The nondisclosure agreement thus required the Buyers to keep Proprietary Information confidential, to return copies of Proprietary Information to ROI if the parties chose not to proceed with the proposed business relationship, and to notify ROI of an unauthorized release of Proprietary Information.  The agreement established that these obligations would exist for three years, that no remedy at law would be adequate in the event of a breach, and that ROI would be entitled to

4

injunctive relief, equitable relief, attorney's fees, and expenses in the event of a breach. As pertinent to this appeal, a forum-selection clause required that "actions related to the subject matter" of the nondisclosure agreement must be brought in a California court.

The Buyers' lawsuit is premised upon the allegation that they invested in IDDC based on representations that the company would soon be acquired by Vidyah, an affiliate of the Knowledge Universe group, a successful business venture that owned many well-known educational brands, including LeapFrog and Kindercare. The Buyers allege that the appellees made representations that Vidyah would purchase IDDC by means of a stock issuance and, shortly thereafter, Vidyah would have an initial public offering, giving the Buyers a speedy cash profit.

Vidyah purchased IDDC by issuing shares of Vidyah stock to the IDDC shareholders, but Vidyah did not have an initial public offering. The Buyers sued, alleging that the appellees "persuaded [them] to purchase IDDC stock by providing false, misleading, and incomplete information concerning the profitability of Vidyah, the structure of a relationship with Vidyah to achieve liquidity[,] . . . and by promising a forthcoming initial public offering of Vidyah stock." The Buyers also alleged that the appellees' failure to disclose pertinent facts rendered their representations materially misleading.

The Buyers brought two causes of action for statutory fraud in a transaction involving stock in a corporation, alleging that the appellees made false representations of material fact and made false promises. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009). They also alleged fraud based on violations of the Texas Securities Act. *See generally* TEX. REV. CIV. STAT. ANN. arts. 581-1 to 581-43 (West 2010 & Supp. 2011). The appellees answered and moved to dismiss, relying on the forum-selection clause of the nondisclosure agreements. The trial court granted the motion to dismiss, and the Buyers appealed.

On appeal, the Buyers contend that the trial court erred by granting the motion to dismiss. They argue that the forum-selection clause does not apply because (1) the alleged fraud occurred before the parties signed the nondisclosure agreements, (2) the underlying claims are not for breach of the nondisclosure agreements, (3) the sale of stock was made pursuant to a separate agreement and the parties to the two agreements are not identical, (4) a forum-selection clause does not deprive Texas courts of jurisdiction over claims arising under the Texas Securities Act, and (5) Section 33L of the Texas Securities Act voids application of an exclusive forum-selection clause.[1]

---

[1] In their notice of appeal, the Buyers also appealed from the trial court's order sustaining John S. Robison's special appearance and dismissing the Buyers' claims against him for want of jurisdiction. Pursuant to a bankruptcy discharge, the Buyers have moved to dismiss their appeal as to Robison only. *See* 11 U.S.C. § 727(b). No party has opposed the motion to

6

## Analysis

"A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.). On appeal, we review the enforcement of a forum-selection clause for an abuse of discretion. *Id.* "However, to the extent that our review involves contractual interpretation of a forum-selection clause—a legal matter—the standard of review is de novo." *Id.*[2]

"When a party seeks to enforce a mandatory forum-selection clause, a court must determine whether the claims in question fall within the scope of that clause."

---

dismiss. Further, the Buyers have not included in their briefing any argument pertinent to the trial court's order sustaining Robison's special appearance. Accordingly, the motion to dismiss their appeal from the order sustaining Robison's special appearance is granted.

[2] Although the nondisclosure agreement specifies that it "shall be governed and construed under the laws of the State of California and the United States without regard to conflict of laws provisions thereof," no party has provided us any arguments based upon California law or otherwise suggested that the contract would be interpreted differently under the laws of California and Texas. Accordingly, like the parties have done, we will analyze the nondisclosure agreement in accordance with well-established principles of contract interpretation under Texas law. *Cf. In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884–86 (Tex. 2010) (per curiam) (relying on well-established principles of contract interpretation under Texas law to determine whether forum-selection clause applied to dispute, despite choice-of-law provision specifying California law); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (per curiam) (holding that in the absence of conflicting laws, "there can be no harm in applying Texas law").

*Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687–88 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884–86 (Tex. 2010) (considering whether Texas lawsuit fell within scope of forum-selection clause). To do so, the court makes a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009). In construing a forum-selection clause, our primary goal is to give effect to the parties' intent as expressed in their written agreement. *Phoenix Network Techs.*, 177 S.W.3d at 615; *see Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). If the forum-selection clause is susceptible of only one reasonable meaning, then it is not ambiguous, and the court may not consider parol evidence. *Id.*; *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The forum-selection clause at issue states that it applies to "actions related to the subject matter" of the nondisclosure agreement. Broadly stated, the subject matter of the nondisclosure agreement is the protection and nondisclosure of information that the parties have deemed to be proprietary, as well as remedies for

8

a breach of the agreement. The Buyers were the recipients of proprietary information, and the terms of the agreement imposed restrictions on the Buyers' use of that information. The agreement also created rights in favor of ROI as the provider of information to enforce the restrictions. The appellees argue that the nondisclosure agreement "govern[ed] the terms of their investment relationship" because, by the agreement's terms, it "relate[d] to 'business or other information relating to ROI, its investors and/or its proposed transactions . . . .'" The nondisclosure agreement was concerned with the use of "Proprietary Information," and that term was defined in the agreement to embrace "business or technical information relating to ROI," including information relating to "its investors" and "its proposed transactions." But no common-sense reading of the nondisclosure agreement permits a conclusion that the subject matter of the agreement is the "investment relationship" itself, such that the forum-selection clause would effectively apply to other disputes arising from the parties' transactions, including the Buyers' claims for breaches of duties existing independently of the specific agreement about the treatment of proprietary information.

The Buyers' claims are for statutory fraud in a stock transaction and for violations of the Texas Securities Act. *See* TEX. BUS. & COM. CODE ANN. § 27.01. The duties implicated by these claims are established by the law applicable to the subscription agreements; they do not relate to the rights and obligations created by

9

the nondisclosure agreement. *See In re Int'l Profit Assocs.*, 274 S.W.3d at 677 ("determining whether a contract or some other general legal obligation establishes the duty at issue and dictates whether the claims are such as to be covered by the contractual forum-selection clause should be according to a common-sense examination of the substance of the claims made"). We conclude that the forum-selection clause in the nondisclosure agreements does not apply to the Buyers' claims, and we hold that the trial court erred by granting the appellees' motion to dismiss. We sustain the Buyers' second issue, which is dispositive of this appeal.

## Conclusion

We reverse the judgment of the trial court dismissing the Buyers' case based on the forum-selection clause and remand for further proceedings.

Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Brown.